IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PHILIP M. SEBOLT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 17 C 3866 |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant United States of America's motion to dismiss. For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

Plaintiff Philip M. Sebolt (Sebolt), currently an inmate at the Federal Correctional Institution Terre Haute (FCI), brings this *pro se* civil action claiming that he was falsely arrested and falsely imprisoned when he was detained in the Special Housing Unit (SHU) at the Metropolitan Correctional Center in Chicago (MCC) between June and August 2013. Sebolt alleges that upon transfer to the MCC on June 17, 2013, placement in the SHU lacked regulatory authority, lacked statutory authority, violated the Administrative Procedures Act (APA), and lacked due process. Sebolt alleges that he has exhausted his administrative remedies and that his present

claims are ripe for judicial action. Sebolt includes in his complaint a single claim that he "was restrained and unlawfully detained in a tiny barron prison cell against his will and stripped of all his liberties by the United States for an indeterminate period of time without any due process protection and in violation of Illinois law on the tort of false arrest and false imprisonment" (Count I). (Compl. Par. 69-71). The United States now moves to dismiss the claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) (Rule 12(b)(1)) requires a court to dismiss an action when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). When subject matter jurisdiction is not apparent on the face of the complaint and is contested, "the district court may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999)(internal quotations omitted)(quoting *United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)). The burden of proof in

regards to a Rule 12(b)(1) motion is on the party asserting that the court has subject matter jurisdiction. *Id.*

In ruling on a motion to dismiss brought pursuant Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

**DISCUSSION**

This court has liberally construed Sebolt's *pro se* filings. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)(stating that a "trial court is obligated to liberally construe a *pro se* plaintiff's pleadings")(citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Kelley v. Zoeller*, 800 F.3d 318, 325 (7th Cir. 2015); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)); *Greer v. Board of Educ. of City of Chicago*, *Ill.*, 267 F.3d 723, 727 (7th Cir. 2001)(indicating that a court should "liberally construe the pleadings of individuals who proceed *pro se*"). Therefore, although Sebolt only lists one count in his complaint, the Court has interpreted Sebolt's complaint to contain the following claims: (1) that the United States violated the Federal Tort Claims Act (FTCA) by falsely arresting and imprisoning Sebolt, (2) that the United States violated the Administrative Procedures Act (APA), and (3) that Sebolt was denied Due Process.

I. FTCA

The United States argues that the FTCA does not authorize suit as there is no state analog for Sebolt's claim, that the discretionary function exception bars suit under the FTCA, and that Sebolt's allegations fail to state a claim for false arrest or false imprisonment in Illinois.

A. No State Analog

The United States argues that this court lacks jurisdiction over Sebolt's FTCA claim because no state analog for Sebolt's claim exists. The United States acknowledges that false imprisonment and false arrest are generally cognizable in Illinois, but asserts that there is no analogous false arrest or false imprisonment cause of action in Illinois for a private entity where the claim depends, not on allegations challenging the fact of confinement, but on disagreement by a plaintiff with a specific place of confinement within a prison. (United States Dis. 5). Sebolt argues that the standard for finding a parallel to Sebolt's claim under Illinois law is not overly stringent and should be applied broadly (Sebolt Ans. 2-3). Sebolt also argues that restraint is established simply by a person being compelled to go where he or she does not wish to go or remaining where he or she does not wish to remain. (Sebolt Ans. 3). Combining these interpretations of case law and comparing his circumstances to that of an employee held against her will in her employer's office, Sebolt concludes that his detention in the SHU constitutes false imprisonment. (Sebolt Ans. 4-5). Sebolt also argues that he is not alleging he was unlawfully held in the Bureau of Prisons (BOP) custody (or a specific place of confinement within a prison) as the result of an unlawful arrest, criminal conviction, or sentence, but rather that he was unlawfully restrained and further deprived of his liberties as a result of a memo issued by the Administrator of the Counter-Terrorism Unit (CTU) directing the Warden and the Captain to detain Sebolt in the SHU at the MCC (the Memo), which was far removed from any judicial legal process. (Sebolt Ans. 7).

Under the FTCA, an individual is permitted "to bring suit in federal court against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §1346(b)(1)." *Palay v. U.S.*, 349 F.3d 418, 425 (7th Cir. 2003). Looking to Illinois law, "'[t]o state a cause of action for false imprisonment, the plaintiff must allege that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint.'" *Arthur v. Lutheran Gen. Hosp., Inc.*, 692 N.E.2d 1238, 1243 (Ill. App. Ct. 1998)(citing *Vincent v. Williams*, 664 N.E.2d 650, 654 (Ill. App. Ct. 1996)). However, no cause of action for false imprisonment exists where imprisonment is under legal authority or detention is made by virtue of legal process issued by a court. *Arthur*, 692 N.E.2d at 1243.

In the instant action, Sebolt was already in BOP custody at the time of his confinement in the SHU at the MCC. (Compl. Par. 3, 9, 15). Sebolt does not contest that his custody is lawful, and Illinois law does not recognize a false imprisonment cause of action for a lawfully incarcerated inmate allegedly unlawfully assigned to administrative detention status. Therefore, because Sebolt's imprisonment is lawful, his false imprisonment claim fails. Further analysis of the many cited cases does not change this conclusion.

Turning to Sebolt's contention that he was deprived of his liberties as a result of the Memo, such an argument implicates both due process and APA violations, which are discussed in later sections.

Therefore, the motion to dismiss the FTCA claim on the grounds that no state analog exists is granted.

B. Discretionary Function Exception

The United States argues that Sebolt's FTCA claim fails for another independent reason, namely that Sebolt's claim is barred by the discretionary function exception to the FTCA. The United States argues that the conduct at issue involved an element of judgment and choice and that the United States' investigatory and enforcement activities involved public policy considerations. The United States argues that 28 C.F.R. §541.23 (§541.23) addresses circumstances in which an inmate *may* be placed in administrative detention status. (United States Dis. 7). Sebolt argues that although §541.23 confers discretion to BOP officials, the official(s) involved must act in accordance with certain limits upon discretion. (Sebolt Ans.9). Sebolt argues that because he allegedly did not fit any of the criteria under §541.23, there was no authority for Sebolt's detention in the SHU and the discretionary function exception does not apply. Sebolt also argues that the Warden who placed him in the SHU was bound to do so by the Memo and therefore the Warden had no room for judgment or choice in placing Sebolt in the SHU. (Sebolt Ans. 10).

7

Generally under the FTCA, individuals are entitled to sue for injuries they suffer at the hands of negligent federal officials; however, "Congress has exempted a variety of claims from the coverage of the statue, including '[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Palay*, 349 F.3d at 427 (citing 28 U.S.C. § 2680(a)). The two requirements for the exception to apply are (1) the complained of act must be discretionary in the sense that it "'involv[es] an element of judgment or choice'" and (2) the governmental action(s) or decision(s) must be based on considerations of public policy. *Palay*, 349 F.3d at 427-28 (citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

In the instant action, Sebolt was transferred to the MCC from the FCI on June 17, 2013 and was housed in the SHU between June 18, 2013 and August 19, 2013. (Compl. Par. 15, 18, 22), (Sebolt Ans. 1). It is undisputed that §541.23 confers discretion to BOP officials in deciding whether to place an inmate in the SHU under administrative detention status. (Sebolt Ans. 9), (United States Reply 4). However, Sebolt contends that he did not fit any of the criteria under said regulation which would authorize his placement in the SHU and that although he had been given several reasons for his placement in the SHU, the true and only reason he was placed in the SHU was to monitor his communications with persons in the community, which is not an authorized reason under §541.23. That is simply not the case.

Accepting as true Sebolt's well pleaded factual allegations, on June 18, 2013, Sebolt was placed in the SHU under administrative detention status pending classification and pending captain review. (Compl. Par. 5). Under §541.23(a), an inmate may be placed in administrative detention status if he or she is a new commitment pending classification. 28 C.F.R. § 541.23(a) (2011). Therefore, Sebolt fit the criteria under the applicable regulation to be placed in administrative detention status at that juncture.

On June 25, 2013, a response to Sebolt's administrative challenge to his placement in the SHU indicated that the Memo dated June 18, 2013 issued by the Administrator of the CTU directed the Warden of the MCC to provide and maintain conditions of confinement as closely as possible to a Communications Management Housing Unit (CMU) environment by placing a CMU inmate into Administrative Detention as per policy. (Compl. Par. 7). Sebolt contends that despite the Memo being allegedly unlawful, the Memo nonetheless gave the Warden no room for judgment or choice in deciding whether to remove Sebolt from the MCC's general population. (Sebolt Ans. 10). As the United States has pointed out, regulations relating to the operation of CMU's have been in effect only since 2015, and no statute, regulation, or binding policy governs a situation where an inmate designated to a CMU is temporarily housed at a facility that does not have a CMU. (United States Mot. 7-8), *see* 28 C.F.R. §§ 540.200-540.205 (2015). Therefore, the Memo Sebolt references and the statements allegedly contained therein do nothing to negate the discretionary

9

authority of BOP officials under §541.23, the regulation governing administrative detention status, to place Sebolt in administrative detention status.

Sebolt contends that at some point he was verbally told that the correct criteria for Sebolt's placement in the SHU should be holdover status rather than pending classification. (Compl. Par. 8). Sebolt states that "it is undeniable that Sebolt was in holdover status during his stay at the MCC Chicago," but argues that he was no longer in transit once he arrived at the MCC and thus no longer fit the criteria of "during transfer to [another] destination." (Sebolt Ans. 11). This is confusing at best because if Sebolt is in agreement that he was in holdover status during his stay at the MCC, that is a sufficient reason for his placement in administrative detention status under §541.23 and defeats his argument that he did not fit any of the criteria under said regulation which would authorize his placement in the SHU. As the United States points out and Sebolt's complaint establishes, Sebolt concedes that he was at the MCC only temporarily. (United States Dis. 7), (Compl. Par. 15). Again, the BOP officials exercised discretion in classifying Sebolt as holdover status, and as such, the first requirement of the discretionary function exception is satisfied.

Sebolt contends that a response to Sebolt's official request for administrative remedy stated that the Warden was authorized to place Sebolt in the SHU under administrative detention status because Sebolt's continued presence in the general population posed a serious threat to himself or others. (Compl. Par. 9). Once again, this stated reason for placing Sebolt in administrative detention status is a reason

under §541.23, namely §541.23(c) which states in relevant part that an inmate may be removed from general population if the inmate's "presence in the general population poses an threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution," and the inmate is "pending transfer to another institution or location." 28 C.F.R. §541.23(c) (2011). Sebolt takes issue with the phrase "pending transfer," but does not point to any definition of "pending transfer" that would mandate whether Sebolt's temporary, approximately two-month stay at the MCC qualifies as "pending transfer" and thus fails to allege anything more than a disagreement with how BOP officials exercised discretion in placing Sebolt in administrative detention.

On July 24, 2013, Sebolt was told that his placement in the SHU was in order to monitor his communications with persons in the community. (Compl. Par. 10). This serves as the crux of Sebolt's argument that his placement in administrative detention status fell outside the scope of §541.23 because monitoring communications is not a listed reason for placement in administrative detention status under §541.23. (Compl. Par. 33-34). The regulations establishing and describing CMU's, 28 C.F.R. §§540.200-540.205 (§§540.200-540.205), proposed in 2010 and implemented in 2015, shed light on the purpose of CMU's. As cited in Sebolt's complaint, §540.200 defines the purpose and scope of CMU's, in relevant part as providing "an inmate housing unit environment that enables staff to more effectively monitor communication between inmates in CMUs and persons in the community," and that

11

such "ability to monitor such communication is necessary to ensure the safety, security, and orderly operation of correctional facilities, and protection of the public." (Compl. Par. 13)(citing 28 C.F.R. § 540.200 (2015)). Sebolt does not contest his assignment to the CMU at the FCI in 2013. (Compl. Par. 9). Therefore, although Sebolt alleges that the true and only reason he was placed in the SHU was to monitor his communications with persons in the community and that such reason falls outside the scope of §541.23, such monitoring does support a valid reason to place an inmate in administrative detention status under §541.23. As explained above, CMU's monitor communication to ensure the safety and security of correctional facilities and to protect the public, and §541.23 authorizes placement in administrative detention if an inmate's presence in general population poses a threat to, in relevant part, the public or to the security or orderly running of the institution. *See* 28 C.F.R. §541.23(c) (2011). Further, as argued by the United States, §541.23 does not define every circumstance when an inmate is "pending transfer," and "poses a threat to life, property, self, staff, other inmates, the public, or to the security or the orderly running of the institution." Sebolt's assignment to the CMU at the FCI implicated the safety concerns that necessitated monitoring his communications, and since the MCC did not have a CMU, the BOP officials exercised their discretion to place Sebolt in administrative detention status under the authority of §541.23(c). Again, Sebolt's allegations amount to a disagreement with being placed in administrative detention

status but do not call into question the BOP officials' discretion to do so under §541.23.

Throughout the approximately two months Sebolt spent at the MCC and in the SHU under administrative detention status, he was provided reasons under §541.23 to justify his administrative detention status. Sebolt makes arguments as to why the reasons were incorrect as applied to him, but he does not allege facts to show that the BOP officials did not have discretion to place him in administrative detention status. Therefore, the first requirement of the discretionary function exception is satisfied.

Regarding the second requirement for the discretionary function exception, Sebolt agrees with the United States that the defendant's investigatory and enforcement activities involved public policy considerations. (Sebolt Ans. 13). Therefore, the second requirement need not further be discussed. Based on the above, the motion to dismiss the FTCA claim on this independent ground is granted.

### C. Failure to State a Claim

The United States argues that Sebolt's FTCA claim should be dismissed for yet a third independent reason, that Sebolt's allegations in his complaint fail to state a claim for false arrest or false imprisonment in Illinois. The United States argues that Sebolt was in custody serving a life sentence following his conviction for advertising child pornography and that neither Sebolt's conviction nor sentence was reversed, expunged, declared invalid, or otherwise questioned by a court. (United States Dis.

10-11). Sebolt states that he already is in custody by a lawfully obtained criminal conviction and sentence, but complains that the allegedly unlawful Memo issued by the Administrator of the CTU effectively and unlawfully extended the CMU to the MCC which resulted in Sebolt's unlawful placement in the SHU, further depriving Sebolt's liberty and causing him mental and emotional injury/suffering. (Sebolt Ans. 13-14).

Under Illinois law, a plaintiff must establish "that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint," in order to recover damages for false imprisonment. *Arthur*, 692 N.E.2d at 1243. However, "imprisonment under legal authority is not false imprisonment." *Id.* For example, a lawfully obtained conviction has been held to defeat a false imprisonment claim under Illinois law. *See Mayorov v. United States*, 84 F.Supp.3d 678, 704 (N.D. Ill. 2015)(stating that because the inmate was lawfully in IDOC custody (i.e. at all times remained in state custody pursuant to a lawfully obtained conviction), his false imprisonment claim was defeated under Illinois law).

In the instant action, it is undisputed that Sebolt was in custody by a lawfully obtained criminal conviction and sentence. (Sebolt Ans. 13), (Compl. Par. 3, 9). Applying Illinois state law, Sebolt's false imprisonment claim thus fails. Therefore, the motion to dismiss the FTCA claim on this independent ground is granted.

## II. APA

The United States argues that to the extent the court construes Sebolt's complaint as asserting a claim for an alleged violation of the APA, 5 U.S.C. §551, *et seq.*, any such claim fails because the authority of the BOP to designate a federal inmate's place of imprisonment, transfers to other federal facilities, and similar matters, is governed by 18 U.S.C. §§3621-3626, which is specifically exempt from challenge under the APA. (United States Dis. 3). Sebolt states in his complaint that the Administrator of the CTU violated the APA by either amending §541.23 or by creating new substantive policy without public notice or opportunity to comment in violation of 5 U.S.C. §553(b) and (c). (Compl. Par. 40). Sebolt contends that the policy of placing inmates in the SHU in administrative detention status for the sole purpose of monitoring communications, such policy contained in the Memo, effectively amends the regulation listing reasons for placing an inmate in administrative detention status, and that any such policy is not included in the regulations pertaining to CMU's. (Compl. Par. 41).

The APA permits judicial review of an agency's decision, including decisions made by the BOP, except when the decision is committed to agency discretion by law or another federal statute specifically precludes review. *Van v. Fed. Bureau of Prisons*, 2014 WL 4419545 at *2 (S.D. Ill. 2014)(citing 18 U.S.C. §3625). A court may not review an agency action where statues preclude judicial review or where agency action is committed to agency discretion by law. *Brown v. Holder*, 770 F.Supp.2d 363, 365 (D.C. 2011)(citing 5 U.S.C. §701(a)(2); *Heckler v. Chaney*, 470

U.S. 821, 828 (1985)). Congress has specifically provided that the BOP's discretionary determinations made pursuant to 18 U.S.C. §3621 are not subject to judicial review under the APA. *Van*, 2014 WL 4419545 at *2.

In the present case, Sebolt claims that the Memo stating that conditions of confinement should be provided and maintained as closely as possible to a CMU environment by placing a CMU inmate into administrative detention as per policy either amended the regulation regarding administrative detention or created new substantive policy. However, §541.23 which defines reasons an inmate may, at the discretion of BOP officials, be placed in administrative detention status, derives its authority from, in relevant part, 18 U.S.C. §§3621, 3622, and 3624. 28 C.F.R. §541.23 (2011). Therefore, the BOP officials' discretionary decisions made pursuant to §541.23 are not subject to judicial review under the APA.

Sebolt is correct that a policy of placing inmates in the SHU in administrative detention status for the sole purpose of monitoring communications is not contained either in §541.23 or §§540.200-540.205, but no such policy was used to place Sebolt in administrative detention status. Looking at Sebolt's complaint, he states that the Memo issued by the Administrator of the CTU directed the Warden at the MCC "to provide and maintain conditions of confinement 'closely as possible' to a CMU environment (general population) 'by placing [a CMU] inmate into Administrative Detention as per policy' (segregation)." (Compl. Par. 7). Sebolt ultimately seems to have issue with the fact that in his CMU at FCI, he was part of a general population

housing unit, but because the MCC does not have a CMU, in order to provide conditions similar to that of the CMU, he was placed in administrative detention status in the SHU. As previously explained, by virtue of being assigned to a CMU, a designation Sebolt does not dispute, monitoring of his communication was deemed necessary to ensure the safety, security, and orderly operation of correctional facilities and protection of the public. Because no regulation or binding policy governs a situation where an inmate designated to a CMU is temporarily transferred to a facility that does not have a CMU, a BOP official was told via the Memo to place the CMU inmate into administrative detention as per policy. Applying the administrative detention policy, §541.23, BOP officials determined Sebolt fit several reasons which justified his placement in administrative detention. (Compl. Par. 18, 24, 29, 31, 33). A new substantive policy simply was not created.

Therefore, as per the aforementioned reasons, the APA claim is dismissed.

III. Due Process

Regarding the due process claim, as is noted by the United States, such due process claim was dismissed before transfer of this matter to this court. (United States Dis. 3). Additionally, Sebolt stated in his motion to correct and/or clarify the record (Motion to Correct) that "the court dismissed Sebolt's due process claim. Sebolt clarifies, however, that he is not bringing a due process violation at this time." (Sebolt

Mot. to Correct 2). Therefore, this court need not further address the due process claim.

## CONCLUSION

Based on the foregoing analysis, the United States' motion to dismiss is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 15, 2018